DAVID K. W. WILSON, JR.
ROBERT FARRIS-OLSEN
MORRISON SHERWOOD WILSON & DEOLA, PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, MT 59624
(406) 442-3261 Phone
(406) 443-7294 Fax
kwilson@mswdlaw.com
rfolsen@mswdlaw.com

*Attorneys for Plaintiffs*

**FILED**

APRIL 28, 2021

Clerk, U.S. District Court
District of Montana
Billings Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| STACY MILLER and A FEW GOOD CLEANERS individually, and on behalf of all others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>FIRST INTERSTATE BANK, and DOES 1 through 100, )<br><br>Defendants. ) | Cause No. CV-21-45-BLG-SPW-TJC<br><br>**CLASS ACTION COMPLAINT**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Stacy Miller and A Few Good Cleaners, by and through their

attorneys, bring this class and representative action against First Interstate Bank

and DOES 1 through 100 (collectively "FIB" or "First Interstate" or "Defendant").

## NATURE OF THE ACTION

1.      When accountholders open a checking account with their bank, they have to enter into a standard contract written by the bank and its lawyers. All the Bank has to do is honor the contract it wrote and comply with the terms it dictated.

2.      During the class period alleged herein, First Interstate promised its customers that if their account balance drops too low to cover a particular item, such as a check, withdrawal, or service charge, First Interstate will charge the customer a single $30 insufficient funds fee ("NSF Fee") or overdraft fee ("OD Fee") per item. But as Plaintiffs and customers all over the country have discovered, First Interstate doesn't abide by this promise. Instead, First Interstate routinely charges its customers multiple fees for the same item, driving their account balances deeper into negative territory.

3.      First Interstate's customers have been injured by the Bank's improper practices to the tune of millions of dollars in violation of First Interstate's clear contractual commitments.

4.      This is a class and representative action brought by Plaintiffs to assert claims in their own right, and in their capacities as the class representatives of all other persons similarly situated, and in their capacities as a private attorney general on behalf of the members of the general public. Defendant wrongfully charged Plaintiffs and the Class Members fees related to their checking accounts. This

2

conduct includes but is not limited to assessing more than one insufficient funds

fee ("NSF Fee"), or an insufficient funds fee followed by an overdraft fee ("OD

Fee"), on the same item.  Plaintiffs, on behalf of themselves and a Class of

similarly situated, seek to end First Interstate's abusive and predatory practices and

force it to refund all of these improper charges.  Plaintiffs assert claims for breach

of contract; breach of the covenant of good faith and fair dealing; and/or unjust

enrichment; deceit; and, violation of state consumer protection law, and seek

damages, restitution, and injunctive relief, as set forth more fully below.

5.      All allegations herein are based upon information and belief except

those allegations which pertain to Plaintiffs or their counsel.  Allegations

pertaining to Plaintiffs or their counsel are based upon, *inter alia*, Plaintiffs' or its

counsel's personal knowledge, as well as Plaintiffs' or their counsel's own

investigation.  Furthermore, each allegation alleged herein either has evidentiary

support or is likely to have evidentiary support, after a reasonable opportunity for

additional investigation or discovery.

**PARTIES**

6.      Based on information and belief, Defendant is and has been a

Montana state-chartered bank, with its principal place of business in the State of

Montana.  Defendant is a citizen of the State of Montana.  Defendant had $17.6

billion in assets as of December 31, 2020 and 150 branches throughout Idaho,

3

Oregon, Montana, South Dakota, Washington, and Wyoming.

7.      Plaintiff Stacy Miller is a citizen of Idaho.  Plaintiff A Few Good

Cleaners is an unincorporated business wholly owned and operated by Plaintiff

Stacy Miller, with its principal place of business in the State of Idaho. Plaintiffs

had checking accounts with Defendant at all times relevant to the class action

allegations.

8.      Without limitation, Defendants DOES 1 through 100, include agents,

partners, joint ventures, subsidiaries and/or affiliates of Defendant and, upon

information and belief, also own and/or operate Defendant branch locations.  As

used herein, where appropriate, the term "Defendant" and "FIB" and "First

Interstate" are also inclusive of Defendants DOES 1 through 100.

9.      Plaintiffs are unaware of the true names of Defendants DOES 1

through 100.  Defendants DOES 1 through 100 are thus sued by fictitious names,

and the pleadings will be amended as necessary to obtain relief against defendants

DOES 1 through 100 when the true names are ascertained, or as permitted by law

or by the Court.

10.      There exists, and at all times herein mentioned existed, a unity of

interest and ownership between the named defendants (including DOES) such that

any corporate individuality and separateness between the named defendants has

ceased, and that the named defendants are *alter egos* in that the named defendants

4

effectively operate as a single enterprise, or are mere instrumentalities of one another.

11. At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

12. Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

13. As to the conduct alleged herein, each act was authorized, ratified or directed by Defendant's officers, directors, or managing agents.

**JURISDICTION AND VENUE**

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because First Interstate is subject to personal jurisdiction here and regularly conducts business in this District.

15.    This Court has subject matter jurisdiction of this action, among other reasons, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) there is minimal diversity because at least plaintiff and defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### FIRST INTERSTATE CHARGES MORE THAN ONE FEE ON THE SAME ITEM

16.    After the class period alleged in this lawsuit, First Interstate implemented a new Fee Schedule attempting to contract for it to be able to impose more than one NSF or OD Fee on the same item ("New Fee Schedule").  This New Fee Schedule is attached as Exhibit "A".

17.    But during the relevant class period alleged in this lawsuit, First Interstate's Fee Schedule ("Class Period Fee Schedule", attached as Exhibit "B") and its Deposit Agreement (attached as Exhibit "C") (collectively "Account Documents"), allowed it to charge a *single* $30 NSF Fee or a *single* $30 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

18.    First Interstate breached its contracts during the class period by charging more than one $30 NSF Fee on the same item, or an NSF Fee followed by

6

an OD Fee, since the contracts explicitly stated—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

19.    First Interstate's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times.[1] And while some other banks and credit unions engage in the same practices as First Interstate, they clearly disclose those charges in the deposit agreements with their customers.

### The Imposition of Multiple Fees on a Single Transaction Violates FIB's Express Promises and Representations

20.    FIB's Account Agreement (Exhibit "C"), written by FIB, states at page 4 the following regarding an NSF or overdraft fee: "If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that transaction will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it.  You will be charged **an** NSF **or** overdraft **fee** according to our NSF or overdraft fee policy."

21.    As can be seen above, the Account Agreement, written by First

---

[1] As indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are affected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period."

Interstate, uses the singular "an" and the singular "fee", not the plural "fees". It also uses the disjunctive "or" when it states "NSF or overdraft fee", not the conjunctive "and." Nowhere does the Account Agreement state an additional NSF FEE or OD Fee for the same item would be charged every time the same item or same transaction was re-submitted by the bank or a merchant. The same check, automatic bill payment, or other electronic payment on an account does not transmogrify into a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiffs took no action to resubmit the item.

22.    Further, FIB's Class Period Fee Schedule (Exhibit B), at all times during the class period in this lawsuit, meaning up until the New Fee Schedule became effective (Exhibit A), did not state that the same item could result in additional fee upon each presentment, or that the same "item" would be treated as a different "item" it was re-submitted. Rather, the Class Period Fee Schedule (Exhibit B) stated as follows:

| | |
|---|---|
| Return check/NSF | $30 |
| Overdraft paid | $30 |

23.    In its New Fee Schedule (Exhibit "A"), First Interstate dramatically changed the terms under which it would charge a "Returned Item(s) Overdraft

---

[1] **Overdrafts may be caused by: checks (including re-presented checks), ACH (including ACH transactions that a merchant initiates after a first ACH is returned), in person withdrawals, ATM withdrawals, other electronic means and returned deposited items.**

Fee", now stating for the first time that a fee would be charged each time the same item was re-presented, as follows:

24.    For the first time, in its New Fee Schedule, First Interstate now contracted the fee would be "$30 per presentment" ("$30/presentment") and stated that overdrafts can be caused by "re-presented checks," and stated that these fees also can result from "transactions that a merchant initiates after a first ACH is returned." Plaintiffs end their class period when this New Fee Schedule became effective, which, on information and belief, is sometime after April 7, 2021.

25.    First Interstate changed the terms of its Fee Schedule to state it would charge for each re-submission of the same transaction because it realized that even if it reprocesses an instruction for payment, it is still the same transaction. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.  As alleged herein, Plaintiffs took only a single action to make a single payment; they therefore created only one transaction and may be charged only a single fee.

26.    Only when its New Fee Schedule became effective, changing the terms of the contracts to each "presentment" of the item, did First Interstate arguably contract to charge an NSF Fee or OD Fee for the same item every time the same transaction was re-processed.

27.    Prior to the effective date of the New Fee Schedule, taken together,

9

the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which FIB will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does FIB disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor did FIB customers ever agree to such fees.

28.     Banks like First Interstate, as well as credit unions, that employ this abusive multiple fee practice know how to plainly and clearly disclose it, as First Interstate attempted to do when it changed the language in its New Fee Schedule. (Exhibit A.)  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something First Interstate never did during the class period at issue in this lawsuit, before the New Fee Schedule.

29.     For example, Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**." https://www.cpb.bank/media/2776/fee-001.pdf. (last visited April 27, 2021)

10

30.    For further example, Klein Bank, which prior to its acquisition in

2019 by Old National Bank, engaged in the same abusive practices as First

Interstate, but at least disclosed it, stating as follows in its banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment
> (electronic or check) is submitted to us for payment from your Bill Payment
> Account when, at the time of posting, your Bill Payment Account is
> overdrawn, would be overdrawn if we paid the item (whether or not we in
> fact pay it) or does not have sufficient available funds; or (2) we return,
> reverse, or decline to pay an item for any other reason authorized by the
> terms and conditions governing your Bill Payment Account. **We will charge
> an NSF/Overdraft Fee as provided in this section regardless of the
> number of times an item is submitted or resubmitted to us for payment,
> and regardless of whether we pay the item or return, reverse, or decline
> to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H,

https://www.klein bankonline.com/bridge/disclosures/ib/disclose.html (last

accessed September 25, 2019 and March 17, 2020) (emphasis added).

31.    Air Academy Federal Credit Union contracts for its NSF fee as:
       "$32.00 **per presentment**."

*See*, https://www.aafcu.com/fees.html (emphasis added) (last visited on or about

April 23, 2021).

32.    Community Bank, N.A. unambiguously contracts on this issue:

> **You may be charged more than one Overdraft or NSF Fee
> if a merchant submits a single transaction multiple times
> after it has been rejected or returned**.

*See*, https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-

Disclosure-FINAL-1.14.2020.pdf (emphasis added) (last visited on or about April

23, 2021).

33.   Delta Community Credit Union contracts unambiguously as follows:

"$35 **per presentment**."

*See,* https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) (last visited on or about April 23, 2021).  Further, in its Account Contract, Delta unambiguously states as follows:

The Bank reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See,* https://www.deltacommunitycu.com/home/forms/member-savings-services-

disclosures-and-agreements.aspx (emphasis added) (last visited on or about April

23, 2021).

34.   USE Credit Union contracts as follows:

"Overdraft/Non-sufficient Funds (NSF): Applies to checks, Bill Pay, ACH, ATM/POS and other electronic debits that are paid or returned. **Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**."

https://www.usecu.org/files/Schedule_of_Fees.pdf (emphasis added) (last visited April 26, 2021)

35.   First Financial Bank contracts unambiguously:

Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

*See,* https://www.bankatfirst.com/content/dam/bankatfirst/legal/special-handling-charges.pdf (emphasis added) (last visited on or about April 27, 2021).

36.   First Hawaiian Bank unambiguously contracted in 2020 as follows:

> You agree that **multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission**.

*See,* https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (emphasis added) (last visited on or about March 17, 2020).

37.   First Northern Credit Union unambiguously contracts its NSF in its Fee Schedule as follows: "$29.00 **per each presentment and any subsequent representment(s)**." *See,* https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count (emphasis added) (last visited on or about April 23, 2021).

38.   Further, First Northern in its Account Contract, unambiguously contracted its NSF Fee as of 2020 as follows:

> You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the**

13

**electronic debit request which could result in multiple NSF fees**

*See,*
(https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_2019.pdf (emphasis added) [last visited on or about March 17, 2020].

39.     Glendale Federal Credit Union unambiguously contracts its NSF fee

as, "$30 **per presentment**."

*See,* https://www.glendalefcu.org/_/kcms-doc/2001/58294/Fee-Schedule.pdf. (emphasis added) (last visited on or about April 26, 2021).

40.     Liberty Financial contracts its NSF fee unambiguously as:

"$27.00 **per presentment**."

*See,* https://liberty.financial/about/fee-schedule/ (emphasis added) (last visited on

or about April 23, 2021).

41.     Members First Credit Union contracts unambiguously:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once...we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment** [.]

*See,*
http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf (emphasis added) (last visited on or about April 23, 2021).

42.     Meriwest Credit Union unambiguously contracts its fee as:

"$35.00/item **per presentment**".

https://www.meriwest.com/sites/www.meriwest.com/files/media/consumer_feesch ed.pdf (emphasis added) (last visited on or about April 23, 2021).

43.   Partners 1st Federal Credit Union contracts unambiguously:

> Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

*See*, https://s3.us-east-1.amazonaws.com/assets.partners1stcu.org/uploads/PDFs/Consumer_Account_Agr eement.pdf (emphasis added) (last visited on or about April 23, 2021)

44.   RBC Bank unambiguously contracts:

> "We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**."

*See*, https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (emphasis added) (last visited on or about April 23, 2021).

45.   Regions Bank contracts unambiguously:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

*See,*
https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf
(emphasis added) (last visited on or about April 23, 2021).

46.    Tyndall Credit Union Bank contracts its NSF fee as:

"$20.00 **per presentment** (maximum 5 per day)."

*See,* https://tyndall.org/member_center/document_center/fee_schedule (emphasis added) (last visited on or about April 23, 2021).

47.    FIB provided no such disclosure during the class period alleged in this lawsuit, only after the class period ends when the New Fee Schedule became effective, and in so doing, deceived its accountholders and breached its contracts with them.

48.    Plaintiffs and the Class Members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.  Plaintiffs did not and could not have, exercising reasonable diligence, discovered both that they had been injured and the actual cause of that injury until they consulted with their attorneys in or about April 2021. While Plaintiffs understood the were assessed fees, they did not fully understand the cause of those fees until about April 2021, because Defendant hid its actual practice from its accountholders by describing a different practice in its contracts. This not only reasonably delayed discovery, but Defendant's affirmative representations and actions also equitably toll any statute of limitations, and also additionally equitably estop Defendant.

49.   Plaintiffs and the class members were harmed by these practices when they were assessed such fees when they should not have been.  A complete evaluation of Defendant's records is necessary to determine the full extent of Plaintiffs' harm from this practice.   On information and belief, Plaintiffs, on more than one occasion, were charged more than one NSF Fee on the same item, or an NSF Fee followed by an Overdraft Fee on the same item, during the class period, meaning at a time before the New Fee Schedule became effective.  As Plaintiffs no longer are customers of First Interstate, discovery will be necessary to identify all incidents of this practice which occurred before the New Fee Schedule became effective.  However, one example of it occurred as follows.

50.   On January 11, 2021, Plaintiffs attempted a payment to Sprint for $94.45.  FIB rejected payment of that item due to insufficient funds in Plaintiff's account and charged a $30.00 "RETURNED ITEM(S) OVERDRAFT FEE."  It was a misnomer for First Interstate to call the fee it charged an "OVERDRAFT FEE" as "overdraft fee" is supposed to pertain to items which were actually paid, whereas it is "non-sufficient funds fee" which is supposed to pertain to items which were not paid by a bank.  This incorrect naming of transactions leads to further confusion and deception.

51.   Unbeknownst to Plaintiffs, and without their request to FIB to retry the transaction, on January 15, 2021, FIB processed the same Sprint $94.45 item

again, and again rejected the transaction and charged Plaintiff another $30.00

"RETURNED ITEM(S) OVERDRAFT FEE" for the same item. It again was a

misnomer for First Interstate to call the fee it charged an "OVERDRAFT FEE" as

"overdraft fees" are supposed to pertain to items which were actually paid, whereas

it is "non-sufficient funds fee" which is supposed to pertain to items which were

not paid by a bank.  This incorrect naming of transactions leads to further

confusion and deception.

52.     In sum, FIB charged Plaintiffs at least $60 in fees to process a single

Sprint item of $94.55.

53.     Plaintiffs understood the transaction to be a single transaction, an

understanding consistent with what is laid out in FIB's Class Period Fee Schedule

and Deposit Agreement, capable at most of receiving a single NSF Fee (if FIB

returned it) or OD Fee (if FIB paid it).  Only after the New Fee Schedule became

effective did FIB contract to charge more than one fee for the same item each time

it was presented.

54.     FIB itself also understood the transaction to be a single transaction.

55.     Discovery will be required to obtain all of Plaintiffs' monthly account

statements from Defendant to identify each occasion on which First Interstate did

this to Plaintiffs.

18

**The Imposition of Multiple Fees on a Single Item Breaches First Interstate's Duty of Good Faith and Fair Dealing.**

56.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiffs and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements First Interstate foisted on Plaintiffs and its other customers— First Interstate has provided itself numerous discretionary powers affecting customers' Bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction, or an overdraft fee If it was unlawful to do so.

57.     First Interstate exercises its discretion in its own favor—and to the

19

prejudice of Plaintiffs and its other customers—when it defines "item" or "check" in a way that directly leads to more NSF and Overdraft Fees. Further, First Interstate abuses the power it has over customers and their Bank accounts and acts contrary to their reasonable expectations under the Fee Schedule and Deposit Agreement. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

58.     By exercising its discretion in its own favor—and to the prejudice of Plaintiffs and other customers—by charging more than one NSF Fee on a single item, or an NSF Fee followed by an Overdraft Fee, First Interstate breaches the reasonable expectation of Plaintiffs and other customers and in doing so violates the implied covenant to act in good faith.

59.     It was bad faith and totally outside Plaintiffs' reasonable expectations for First Interstate to use its discretion to assess two or three NSF Fees, or an NSF Fee followed by an overdraft fee, for a single attempted item.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this case, and each of its respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a)(b)(1), (b)(2) and (b)(3) on behalf of the following class.

> **All United States citizens who have or have had accounts with FIB who incurred more than insufficient funds fee, or an insufficient**

**funds fee followed by an overdraft fee, on the same electronic payment or check beginning eight years preceding the filing of this Complaint and ending on the day the FIB New Fee Schedule dated April 7, 2021 became effective.**

61.     Excluded from the Class are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class Members.

62.     Plaintiff can identify and ascertain all other class members from Defendant's business records. Upon information and belief, Defendant has databases, and/or other documentation, of its customers' transactions and account enrollment.  These databases and/or documents can be analyzed by an expert to ascertain which of Defendant's account holders have been harmed by its practices and thus qualify as Class Members.  Further, the Class definition identifies unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover.  Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class Members through notice published in newspapers or other publications. Thus, Plaintiff's classes are ascertainable.

63.     **Numerosity** – Plaintiff does not know the exact size of the class because this information is in Defendant's exclusive control. However, based on

FIB having $17.6 billion in assets as of December 31, 2020 and 150 branches throughout Idaho, Oregon, Montana, South Dakota, Washington, and Wyoming, as well as other reasons, numerosity will be met, and joinder of all class members would be impracticable.

64.   **Typicality** – Plaintiffs' claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and all of the Class Members are substantially the same because all of the relevant agreements between Defendant and its customers, including the Class Period Fee Schedule and the New Fee Schedule and the Account Agreement, were identical as to all relevant terms, and also because, *inter alia*, the challenged practices of charging customers for improper fees are uniform for Plaintiffs and all Class Members.  Accordingly, in pursuing its own self-interest in litigating these claims, Plaintiffs will also serve the interests of the other Class Members.

65.   **Commonality** – Questions of law and fact common to the Class(es) exist and predominate over questions affecting only individual members, including, inter alia, the following:

a.   Whether, pursuant to the Class Period Fee Schedule or Account Agreement, Defendant contracted that it would charge more than one NSF fee for the same transaction, each time that same transaction was

22

re-submitted;

b. Whether, pursuant to the Account Agreement, Defendant contracted that it would charge an overdraft fee on the same item after already having charged an NSF fee on that same item.

c. Whether, pursuant to the Class Period Fee Schedule, Defendant disclosed it would charge an additional NSF Fee, or an overdraft fee, on the same item after already having charged an NSF fee on that same item.

d. Whether the Class Period Fee Schedule or Account Agreement is ambiguous on the issue of whether Defendant would charge an NSF Fee, or an overdraft fee following an NSF fee, every time the same item was presented.

e. Whether the contracts are ambiguous on what fees will be charged under what circumstances, or referred to inconsistently.

66. **Adequacy** – Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Plaintiffs and their counsel intend to prosecute this action vigorously.

23

67. **Predominance and Superiority** – The matter is properly maintained

as a class action under Federal Rule of Civil Procedure 23(b)(3) because the

common questions of law or fact identified herein and to be identified through

discovery predominate over questions that may affect only individual Class

Members. Further, the class action is superior to all other available methods for

the fair and efficient adjudication of this matter. Because the injuries suffered by

the individual Class Members are relatively small, the expense and burden of

individual litigation would make it virtually impossible for Plaintiffs and Class

Members to individually seek redress for Defendant's wrongful conduct. Even if

any individual person or group(s) of Class Members could afford individual

litigation, it would be unduly burdensome to the courts in which the individual

litigation would proceed. The class action device is preferable to individual

litigation because it provides the benefits of unitary adjudication, economies of

scale, and comprehensive adjudication by a single court. In contrast, the

prosecution of separate actions by individual Class Members would create a risk of

inconsistent or varying adjudications with respect to individual Class Members that

would establish incompatible standards of conduct for the party (or parties)

opposing the Class and would lead to repetitious trials of the numerous common

questions of fact and law. Plaintiffs know of no difficulty that will be encountered

in the management of this litigation that would preclude its maintenance as a class

action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiffs and the Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

68.    Plaintiffs do not believe that any other Class Members' interest in individually controlling a separate action is significant, in that Plaintiffs have demonstrated above that its claims are typical of the other Class Members and that Plaintiffs will adequately represent the Class. This particular forum is a desirable forum for this litigation because Defendant resides in this District. Plaintiffs do not foresee significant difficulties in managing the class action in that the major issues in dispute are susceptible to class proof.

69.    Plaintiffs anticipate the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class Members. Upon information and belief, Defendant's own business records and/or electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff anticipates the use of additional media and/or mailings.

70.    This matter is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure in that:

   a.  Without class certification and determination of declaratory,

injunctive, statutory and other legal questions within the Class format, prosecution of separate actions by individual members of the Class will create the risk of:

1. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

2. Adjudication with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

b. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

71.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

72.     Plaintiffs and each of the Class Members entered into a Fee Schedule and Account Agreement with Defendant, which has been identified herein as the Class Period Fee Schedule and the Account Agreement, covering the subject of NSF and overdraft transactions.  This contract was drafted by and is binding upon Defendant.

73.     The operative contracts governed which fees could be charged and under which circumstances, and Defendant breached these contracts by charging fees under circumstances not permitted by the contracts.

74.     Plaintiffs and the Class Members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the Account Agreement, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

75.     As a proximate result of Defendant's breaches, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

76.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

77.     Plaintiffs and each of the Class Members entered into contracts with Defendant covering the subject of NSF and overdraft transactions, which has been identified herein as the Class Period Fee Schedule and the Account Agreement.

78.     Under Montana law, every enforceable contract contains an implied covenant of good faith and fair dealing. Further, whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

79.     The material terms of the contracts therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiffs and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' and the Class Members' rights and benefits

28

under the contracts.

80.    Plaintiffs and the Class Members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

81.    Defendant breached the implied covenant of good faith and fair dealing based, *inter alia*, on its OD Fee and NSF Fee practices during the tme of the Class Period Fee Schedule designed to charge improper multiple fees, thereby executing its contractual obligations in bad faith, depriving Plaintiffs and the Class Members of the full benefit of the contracts.

82.    As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

83.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

84.    As a result of the wrongful misconduct alleged above, Defendant unjustly received millions of dollars in improper fees.

85.     Because Plaintiffs and the Class Members paid the erroneous repeat NSF and other fees assessed by Defendant, Plaintiffs and the Class Members have conferred a benefit on Defendant, albeit undeservingly.  Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it was conveyed, and yet has voluntarily accepted and retained the benefit conferred.  Should it be allowed to retain such funds, Defendant would be unjustly enriched.  Therefore, Plaintiffs and the Class Members seek relief as set forth in the Prayer below.

### FOURTH CAUSE OF ACTION
#### (Money Had and Received)

86.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

87.     Defendant has obtained money from Plaintiffs and the Class Members by the exercise of imposition, coercion, undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

88.     As a result, Defendant has in its possession money which, in equity, belongs to Plaintiffs and the Class Members, and thus, this money should be refunded to Plaintiffs and the Class Members.  Therefore, Plaintiffs and the Class Members seek relief as set forth in the Prayer below.

### FIFTH CAUSE OF ACTION
#### (Violation of the Montana Consumer Protection Act)

89.     The preceding allegations are incorporated by reference and re-alleged

as if fully set forth herein.

90.    Plaintiffs bring this claim individually under the laws of Montana, and on behalf of the Class.

91.    Plaintiffs are consumers.

92.    The Montana Consumer Protection Act ("CPA") makes it unlawful to engage in any unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Mont. Code. Ann. § 30-14-103.

93.    Federal Rule of Civil Procedure 23 permits Plaintiffs to bring a CPA claim as a class claim in federal court notwithstanding any limitation on class claims provided in the CPA.

94.    Defendant violated the CPA by charging multiple NSF Fees on a single item, or an NSF Fee followed by an Overdraft Fee, thereby charging fees that were not contracted in either the Account Agreement or Class Period Fee Schedule. Defendant's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiffs and Class Members arising from Defendant's unfair and deceptive practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

95.    Defendant intentionally violated the CPA by engaging in its

undisclosed multiple NSF Fee practices to collect millions of dollars in such fees that were not agreed to by the parties in the Class Period Fee Schedule and Account Agreement, and which fee practices were not authorized by Plaintiffs and Class Members.  Defendant knew it was not permitted to do this; it changed the contract language in its New Fee Schedule to now attempt to contract for this, but did so without returning the money it improperly took under the Class Period Fee Schedule.

96.    Plaintiffs and the Class Members suffered ascertainable loss as a result of Defendant's multiple NSF Fee and Overdraft Fee practices, which necessarily flowed directly from Defendant's deceit in its scheme to systematically assess such fees against its account holders.

97.    Plaintiffs and all Class Members justifiably relied on Defendant's deceptive representations they would be assessed fees only as provided in the Class Period Fee Schedule and Account Agreement.

98.    Plaintiffs and the Class Members have been damaged by Defendant's deceptive practices.

99.    Defendants' conduct was intentional, wrongful, reckless, and outrageous.

100.    Accordingly, Plaintiffs and the individual class members and are entitled to recover treble or statutory damages, costs and reasonable attorneys'

32

fees.

## SIXTH CAUSE OF ACTION
### (Deceit)

101.    The allegations contained in the previous paragraphs are incorporated

by reference.

102.    The facts support Defendant's violation of § 27-1-712, MCA, which

states:

(1) One who willfully deceives another with intent to induce that person to

alter the person's position to the person's injury or risk is liable for any

damage that the person suffers.

(2) A deceit, within the meaning of subsection (1), is either:

(a) the suggestion as a fact of that which is not true by one who does

not believe it to be true;

(b) the assertion as a fact of that which is not true by one who has no

reasonable ground for believing it to be true;

(c) the suppression of a fact by one who is bound to disclose it or who

gives information of other facts that are likely to mislead for want

of communication of that fact; or

(d) a promise made without any intention of performing it.

(3) One who practices a deceit with intent to defraud the public or a

particular class of persons is considered to have intended to defraud every

individual in that class who is actually misled by the deceit.

§ 27-1-712, MCA.

103.   Accordingly, Plaintiffs and the individual Class Members and are

entitled to recover compensatory damages and punitive damages.

## PRAYER

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1.     For an order certifying this action as a class action;

2.     For compensatory damages on all applicable claims and in an

amount to be proven at trial;

3.     For an order requiring Defendant to disgorge, restore, and

return all monies wrongfully obtained together with interest calculated at the

maximum legal rate;

4.     For treble damages;

5.     For statutory damages;

6.     For punitive damages;

7.     For an order enjoining the wrongful conduct alleged herein;

8.     For costs;

9.     For pre-judgment and post-judgment interest as provided by

law;

10.     For attorneys' fees under 30-14-133, MCA, the common fund doctrine, and all other applicable law and sources; and,

11.     For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members demand a trial by jury on all issues so triable.

Dated: April 28, 2021                    Respectfully submitted,

BY:     /s/ David K. W. Wilson, Jr.
**Morrison Sherwood Wilson Deola PLLP**
David K.W. Wilson, Jr.
Robert Farris-Olsen
P.O. Box 557
Helena, Montana 59624
Telephone: (406) 442-3261
Facsimile: (406) 443-7294
kwilson@mswdlaw.com
rfolsen@mswdlaw.com

**The Kick Law Firm, APC**
Taras Kick, CA Bar No. 143379*
Taras@kicklawfirm.com
Jeffrey C. Bils, CA Bar No. 301629*
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@Kicklawfirm.com

*Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiffs Stacy Miller and A Few Good Cleaners and the Putative Class*